UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION NO. 03-421-S

NEW CINGULAR WIRELESS, PCS, LLC
(f/k/a AT&T WIRELESS PCS, LLC,
and MCF COMMUNICATIONS, INC.
Plaintiffs,

v.

TOWN OF CHARLESTOWN, RHODE ISLAND, et al.
Defendants.

**PLAINTIFFS MCF'S AND NEW CINGULAR'S (formerly AT&T WIRELESS') MOTION FOR FURTHER RELIEF IMPLEMENTING THIS COURT'S ORDER OR, IN THE ALTERNATIVE, FOR AMENDMENT OF THE REMAND ORDER**

For the reasons stated in the accompanying memorandum, the Plaintiffs MCF Communications, Inc. ("MCF") and New Cingular Wireless PCS, LLC ("Cingular), formerly known as AT&T Wireless PCS, LLC) move for an order (1) for further relief enjoining the Town from requiring Planning Commission Review, or (2) amending the Order of this Court issued on May 24, 2005, to require the Town to issue a permit "authoriz[ing] construction" based upon review and compliance with standard building permit criteria, excluding Development Plan Review under Article VIII of the Charlestown Zoning Ordinance. In the alternative, the plaintiffs move for an order that MCF receive a ruling upon its jurisdictional objection to Planning Commission Review and be permitted to proceed without waiver of that objection.

The Plaintiffs rely upon the accompanying Memorandum of Law, Affidavit of

Brad Gannon, and Zoning Code of the Town of Charlestown.

**By Its Attorneys,**

**Richard J. Welch, R.I. Bar # 4497**
**Moses Afonso Jackvony, Ltd.**
**170 Westminster Street, Suite 201**
**Providence, Rhode Island 02903**
**(401) 454-3600**

**Douglas H. Wilkins,**
**ANDERSON & KREIGER LLP**
**43 Thorndike Street**
**Cambridge, MA 02141**
**(617) 252-6575**
**Pro Hac Vice**

**Dated: March 17, 2006**

## CERTIFICATE OF SERVICE

I certify that a copy of this Motion was mailed via first class mail, postage prepaid, to Christopher J. Zangari, Esquire, Marinosci & Zangari, 1575 South County Trail, East Greenwich, Rhode Island 02818 on the 17th day of March 2006.

wpdata/at&t/Charlestwown/MoFurtherRelief 03.17.06

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION NO. 03-421-S

AT&T WIRELESS PCS, LLC, d/b/a AT&T WIRELESS and MCF COMMUNICATIONS, INC.
Plaintiffs,

v.

TOWN OF CHARLESTOWN, RHODE ISLAND, et al.
Defendants.

**PLAINTIFFS MCF'S AND NEW CINGULAR'S (formerly AT&T WIRELESS') MEMORANDUM IN SUPPORT OF MOTION FOR FURTHER RELIEF IMPLEMENTING JUDGMENT OR FOR AMENDMENT OF REMAND ORDER**

The Plaintiffs, MCF Communications, Inc. ("MCF") and New Cingular Wireless PCS, LLC ("Cingular"), formerly known as AT&T Wireless PCS, LLC) submit this Memorandum in support of their Motion for Further Relief Pursuant to the Court's Decision and Order on the parties' cross-motions for summary judgment, dated May 24, 2005 ("Order") or, in the alternative, to amend the Order.

## FACTS

Cingular currently has a gap in its wireless communications services along Route 1 and surrounding areas in and around Charlestown (the "Coverage Gap"). Compl. and Ans., ¶ 74(a). To address this Coverage Gap, Cingular (then known as AT&T Wireless) and its co-applicant MCF applied for a special use permit to construct a wireless communications facility on a lot and to install and operate a wireless communications installation in an R-3A Zoning District at 5081 Old Post Road (Lot 103 on Assessor's Map 14), Charlestown, Rhode Island ("Site"). Compl. and Ans., ¶ 42. Communication Towers are allowed by Special Use Permit in the R-3A District

under Table 30.1 (District Uses) and Section 218-105(B) of the Charlestown Zoning Ordinance ("Ordinance"). Answer, ¶ 24, 25. Section 218-105(B)(2) of the Ordinance sets forth submittal requirements for an application for a special use permit. Id., ¶§ 26. After hearing, the Charlestown Zoning Board of Review ("Board") voted to deny the application on August 19, 2003, and filed its Decision in the Town Clerk's office on August 28, 2003. Compl. and Ans., ¶¶ 52, 65. This action followed.

Upon cross-motions for summary judgment, U.S. Magistrate Judge Martin recommended that Cingular's motion be granted on the count alleging that the Board had failed to state its reasons. He recommended remand on that issue. He recommended that the defendants' motion be allowed on the question of effective prohibition of coverage and on the other issues in the complaint. Cingular filed timely objections to certain aspects of the Magistrate Judge's report and recommendation.

In the Order, this Court adopted the Magistrate's ruling that the Board had violated the Telecommunications Act by failing to state reasons for the Board's decision, but limited the remand to the five items listed by the Board as having been omitted from the applicants' submissions to the Board. The Court held that there was an issue of fact on the effective prohibition claim, and therefore denied summary judgment on that point.

Upon remand, the Board held a hearing and granted the special use permit on July 19, 2005. However, subsequent developments in the Town have attempted to revisit issues that should have been resolved by the Board's decision, as follows:

On December 21, 2005, MCF Communications filed an application for a Building Permit with the Town of Charlestown to construct the Communication Tower at 5081 Old Post Road,

Map 14/Lot 103 in the Town of Charlestown upon which Cingular could locate (the "Project"). Affidavit of Brad Gannon ("Gannon Aff.") ¶ 3. MCF received a letter, dated December 30, 2005, from John Matoza, CBO, Building Official of the Town of Charlestown stating, in part, that "I can not review your Building Permit application … [as] Article VIII Section 218-38(A) requires that all nonresidential activities, which require a Building Permit, shall require site plan review and approval before a building permit is issued. I cannot process this application until you have Planning approval." Gannon Aff. ¶ 4 and Exhibit A. Upon receipt of the December 30, 2005 letter, MCF then scheduled a meeting and met with the Town of Charlestown Planner, John Lamphere on January 6, 2006 to determine the requirements of the Town of Charlestown Planning Commission regarding a site plan review for the Project. Gannon Aff. ¶ 5.

At the meeting with Mr. Lamphere, MCF requested the Planner conduct an administrative review of the Project as MCF believed was appropriate under the Town of Charlestown's Ordinances, Section 218-39 "Town Planner Review", so that MCF Communications could get its Building Permit expeditiously. Gannon Aff. ¶ 6. Mr. Lamphere refused to conduct an administrative review of the Project pursuant to Section 218-39 "Town Planner Review". Gannon Aff. ¶ 7. Mr. Lamphere informed MCF that it must submit an application to the Planning Commission for the Project and that the first opportunity for a review by the Planning Commission would be February 15, 2006. Gannon Aff. ¶ 8, Exhibit B. MCF Communications complied. Gannon Aff. ¶ 9.

Prior to the February 15, 2006 Planning Commission meeting, counsel for MCF Communications filed a memorandum challenging the Planning Commission's jurisdiction as to Project. Gannon Aff. ¶ 10 and Exhibit C. At the February 15, 2006 meeting, the Planning

Commission stated that it would not address the jurisdictional issues raised in the memorandum submitted by counsel for MCF Communications. Gannon Aff. ¶ 11. This left MCF with the choice of going forward in a forum whose jurisdiction it challenged (thereby arguably waiving its jurisdictional argument, as discussed below), or withdrawing the application. As a result of the Planning Commission's refusal to address the jurisdictional issues, MCF Communications decided to withdraw its application without prejudice and with permission of the Commission to do so. Gannon Aff. ¶ 12.

## ARGUMENT

### A. THE COURT SHOULD ENTER A SUPPLEMENTAL ORDER ENJOINING THE TOWN TO PROCESS THE BUILDING PERMIT APPLICATION WITHOUT REQUIRING ANY PLANNING COMMISSION PROCEEDINGS

#### *1. The Order Required A Decision Within 60 Days, Which Includes Any Advisory Input from the Planning Commission.*

The defendant Town, through its Planning Commission, Town Planner and Building Official, seeks belatedly to inject a new phase of review that, by statute, is actually part of – and must precede – the ZBR special use permit process. Since this Court ordered the special use permit proceedings to be completed by July 24, 2005 (60 days after the Order), the Town's belatedly chosen course undermines and conflicts with the Order and must be enjoined.

In particular, the Town now contends that MCF's building permit application must undergo a development review by the Town's Planning Commission – even though such review can, by statute, only be advisory to the Zoning Board of Review **which has already acted**:

> **Special provisions – Development plan review.** – (a) A zoning ordinance may permit development plan review of applications for uses requiring a special-use permit, a variance, a zoning ordinance amendment, and/or a zoning map change. The review is conducted by the planning board or commission *and is advisory to the permitting authority.*

R.I. G.L. § 45-24-49 (italics added).[1] Where Planning Commission review is only "advisory to the permitting authority", the Town has no right to insist upon Commission review of a special use permit, particularly where that special use permit issued on remand from the Federal Court. In particular, there is no occasion in 2006 for the Planning Commission to advise the Board regarding a permit that it already issued in 2005. To do so at this point only serves to delay permitting and inject processes that are untimely under this Court's order.

The Order, p. 3 directed that remand to the Zoning Board of Review "will be solely to allow Plaintiffs to satisfy the five prerequisites for issuance of a Special Use Permit under the Charleston Zoning Ordinance, with which Plaintiffs have previously failed to comply [citation omitted], and that further denial of the application may only be based on Plaintiffs' failure to satisfy these requirements." In the absence of delay caused by the Plaintiffs, the ZBR was required "to issue its written decision on this matter . . . **within sixty days of the issuance of this Order**." Id., pp. 3-4(emphasis added). Both of these requirements appeared in the Court's directive at the end of the Order, p. 6. The Order also determined that factual issues remain regarding the effective prohibition of service claim against the defendants.

The Zoning Board of Review in fact did act and granted the Special Use Permit by vote on July 19, 2005. It issued a written decision dated July 21, 2005 to that effect. The time for Planning Commission input was during the original proceedings in 2003 (when the Commission could have advised on the Project in its entirety pursuant to Charlestown Zoning Ordinance Section 218-25.D or otherwise) or, at the latest, prior to the Zoning Board of Review's decision

1 "The term permitting authority is not defined in the Act, but it obviously seems to refer to the authority having power to grant permits. This would mean the board of review for variances and special-use permits, and apparently the city or town council for zoning amendments and zoning map changes, since these are legislative matters within its jurisdiction." Chase, *Primer on the New Zoning Exhibit Act,* 26 Suffolk U.L. Rev. 333, 335 (1992).

on July 19, 2005 (when it could have advised regarding the five items still open on remand). In no event could the Commission's advice to the Board be entertained more than 60 days after May 24, 2005, pursuant to the clear and explicit command of the Order. To try to inject this advisory function into the permitting process at this late date obstructs the Court's order and the plaintiffs' rights.

Indeed, where the Commission's review is advisory to the permitting authority, injecting new issues for consideration in the special use permitting process at this point would contravene the basic principle under the Telecommunications Act that the Court will not entertain reasons for denial that the Board did not give in its written decision. Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21 (1st Cir. 2002)(A board may not provide the applicant with one reason for a denial and, then, in court, seek to uphold its decision on different grounds. . . . [The applicable model of judicial review] customarily prohibits a court from affirming an agency on grounds other than those the agency gave in its decision.). Anything that the Planning Commission might add at this point to the issues already resolved would violate the National Tower rule.

Allowing additional, advisory Commission input at this point also contravenes the fundamental remedial principle under the Telecommunications Act that Congress intended to prevent "multiple rounds of decisions and litigation". National Tower, 297 F.3d at 21-22, 24 (in a typical TCA case, where "the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board *to authorize construction*". Id. at 24 (Emphasis added). The Town cannot subject MCF and Cingular to another round of administrative decisions that are part of ("advisory to") the same Board process that the Court has reviewed.

The Order properly implemented the Congressional directives and intent set forth in the previous two paragraphs by limiting the remand to five issues. See also Magistrate Judge's Report, which contains the following statement[2] in Footnote 21, p. 25:

> Lastly, in the interest of avoiding a second appeal, the court observes that the record does not appear to support the denial of Plaintiffs' application on any basis other than Plaintiffs' failure to satisfy the prerequisites for issuance of the Special Use Permit.

It follows that delaying this matter for input by a Commission that the legislature had decreed is advisory to the ZBR's decision would violate this Court's Order that the ZBR's work become final by July 23, 2005 and would defeat the principles underlying that Order.

*II. The Charlestown Ordinance May Not Lawfully Contradict the Advisory Nature of the Planning Commission's Role, Particularly in Light of the Court's Order.*

The Town will presumably point to certain sections of the Charlestown Zoning Ordinance in an attempt to justify its position. Article VIII of the Charlestown Zoning Ordinance ostensibly sets forth a process for "development plan review (site plan review)." For "projects less than two acres in size, requiring less than twenty parking spaces and having less than two thousand square feet of new floor area", the Town Planner is supposed to have approval authority "after consultation with the Building Inspector and Public Works Director." Ordinance, § 218-39. The Ordinance also purports to authorize the Town Planner to "refer any site plan to the Planning Commission for full review." Without such a referral, the Ordinance would not require Planning Commission review, as this project does not meet the Commission's review thresholds. Ordinance, § 218-40.[3]

---

2 This statement followed the Report's instructions that the Board reconsider the plaintiffs' application upon compliance "with the five requirements of the Zoning Ordinance which the court has identified above as being unsatisfied", and the Report's "advi[c]e]" that a number of reasons discussed by Board members would not "constitute substantial evidence for denial of Plaintiffs' application."

3 In the absence of a Town Planner referral, the Commission is directed by the Ordinance to review site plans that

Development plan or site plan review is one of the components of the State's land use program. Any municipality that enacts a process of site plan review must conform to the provisions of the Zoning Enabling Act enacted as Public Law 1991, ch. 307 and codified as Chapter 24 of Title 45 (the "Zoning Enabling Act"). See Munroe v. East Greenwich, 733 A.2d 703 (R.I. 1999).

The clear text of R.I.G.L. §45-24-49(a), quoted above, reflects the General Assembly's conscious choice to prohibit precisely what the Town is trying to do in this case. The Rhode Island Land Development and Subdivision Review Act of 1992 ("The Act') made the following changes to prior law:

> A zoning ordinance may permit ~~the~~ development plan review of applications for uses requiring a special use permit, variance, zoning ordinance amendment and/or zoning map change. The Review is ~~shall be based upon specific and objective guidelines, but~~ conducted by the planning board or commission and shall be advisory only to the permitting authority ~~unless otherwise provided by ordinance~~.

[Underlining indicates additions and strikethrough indicates deletions]. P.L. 1992, ch. 365, §2. By striking the final clause, the 1992 amendment to R.I.G.L. §45-24-49(a) therefore **specifically and intentionally removed** any authority for the Town to maintain the system set forth Section 218-39 of its Ordinance and in the Town Planner's referral – i.e. make planning commission review anything but advisory to the permitting authority.[4] The Rhode Island Supreme Court has

---

(1) exceed the criteria of § 218-39 [sites exceeding two acres in size, requiring twenty or more parking spaces, or having two thousand or more square feet of new floor area." ], (2) site plans that may affect the ecology of the Town by impacting water resources or presenting major road or traffic problems.

4 As originally enacted as part of the Zoning Enabling Act, Section 45-24-49 entitled "Special Provisions-Development Plan Review" was "virtually incomprehensible" because it contained serious flaws, which made it difficult to evaluated either its operation or its effectiveness. See Chase, *Primer on the New Zoning Enabling Act*, 26 Suffolk U.L. Rev. 333, 335 (1992). Subsection (a) deals with development plan review for uses requiring action by the zoning board or the town council. The original Section 45-24-49(a) provided as follows:

> A zoning ordinance may permit the review of application for uses requiring a special use permit, variance, zoning ordinance amendment and/or zoning map change. Review shall be based upon specific and objective guidelines, but *shall be advisory only to the permitting authority unless otherwise provided by*

held that the Legislature's intent was to preempt local efforts to enact procedures that deviate from the provisions of the 1992 Amendment:

> "the legislature clearly intended to establish uniform procedures for land development throughout the state and in explicit terms superseded local regulations, whether authorized by Charter provisions or pre-existing special statutes."

Munroe v. Town of East Greenwich, 733 A.2d 703, 711 (R.I. 1999).

The structure of Section 45-24-49(a) and Section 45-24-49 (b) confirms this conclusion with respect to Charlestown's Ordinance. Subsection (b) [uses allowed as of right] requires that reviews be based on specific and objective guidelines and that a denial be an appealable decision pursuant to R.I.G.L. §45-24-645. Subsection (a) [uses allowable by special use permits] does not contain either requirement, precisely because such review is only advisory to the permitting authority and, therefore, the decision of a planning board under Subsection (a) is not binding on either the applicant or the permitting authority[6]. Indeed, if the Zoning Board has already granted a special-use permit, site plan review by the Planning Board under provisions such as Sections 218-38 to 40 of Charlestown's Ordinance would be futile, since there is no agency to advise on a pending matter as required by R.I.G.L. § 45-24-49. Mindful of the hierarchy of authorities established in the Zoning Enabling Act; the statutory provisions thus confirm that it would be inappropriate (and futile) to have a planning commission review that might contradict the earlier

---

*ordinance.* [Emphasis added.]

P.L. 1991, ch. 307, §1.

5 R.I.G.L. §45-24-64 provides that an appeal of an administrative decision is to the Zoning Board.
6 Subsection (a) is similar in form and substance to other provisions of the Zoning Enabling Act, which grant zoning boards the power "to refer matters to the planning board or commission, or to other agencies of the city or town, as the zoning board of review may deem appropriate, for findings and recommendations." Rhode Island General Laws Section 45-24-57(G). Because a zoning board or town council has jurisdiction over a project under Subsection (a) but not under Subsection (b), a decision regarding development plan review with respect to each

actions of a town council or zoning board, which are statutorily superior bodies. See generally Munroe v. Town of East Greenwich, 733 A. 2d 703 (R.I. 1999).

In short, Section 218-38 of the Charlestown Zoning Ordinance contravenes the provisions of R.I.G.L. § 45-24-49 and cannot be used to delay or impede the enjoyment of rights granted by the Zoning Board in timely compliance with the order of remand. This is particularly true when the Zoning Board is acting on remand pursuant to the orders of the Federal Court. In that instance, interference by the Planning Commission with the superior authority of the permitting authority to comply with the Court order contravenes both Rhode Island law and the remedial power of this Court.

*III. The Town's Actions in Requiring an Unlawful Planning Commission Review Constitute Undue Delay under the Telecommunications Act.*

If more is needed, the Town's post-judgment actions also violate the "substantial evidence" and "undue delay" provisions of the Telecommunications Act.

A. Undue Delay

The Telecommunications Act provides in relevant part that:

> A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.@

47 U.S.C. 332(c)(7)(B)(ii). Here, the "nature and scope" of the request at this point is simply for a building permit, pursuant to a special use permit that has already been granted. One might expect that it would take months to issue a **special use permit**, given the factual and evaluative decisions that the permitting authority must make, after notice to the public, public hearing

---

necessarily has a different effect.

compilation and review of a record, deliberations and a vote. By contrast, the building permit is supposed to issue expeditiously (generally within 15 days, R.I.G.L. Section 23-27.3-114.1 "Action Application") and without resort to the extensive procedures for a special use permit.

"Congress implemented the "reasonable period of time" provision of the TCA to " 'stop local authorities from keeping wireless providers tied up in the hearing process' through invocation of state procedures, moratoria, or gimmicks." Masterpage Communications, Inc. v. Town of Olive, 2005 WL 2387838 at *9 (N.D.N.Y. 2005), citing Lucas v. Planning Bd. of Town of LaGrange, 7 F.Supp.2d 310, 321-22 (S.D.N.Y.1998) (quoting Sprint Spectrum L.P. v. Town of Easton, 982 F.Supp. 47, 50 (D.Mass.1997)). Moreover, the Town's actions are part of a pattern that began in 2003, culminating in the Order. Planning Commission issues that should have been addressed in 2003, or on remand in 2005, cannot now be reviewed on the third go-around. In a case bearing some similarities to the present one, the Court granted summary judgment to the carrier, after considering the interplay between the Telecommunications Act's anti-delay provisions and the attempt to invoke local ordinance for planning review and other matters:

> Even viewing the facts in the light most favorable to defendants, however, the Town Board's subsequent insistence that plaintiff return to the Planning Board for the third time to seek "reconsideration and re-approval of the subdivision", was unreasonable. First, although the Tower Law empowers the Town Board to request a recommendation from the Planning Board, it does not contain a provision which would authorize the Town Board to direct an applicant to apply to the Planning Board for a change in use of the subdivision. Second, the Tower Law specifically provides that the Town could have denied Masterpage's application on the basis that the proposed use was contrary to the use for which the subdivision was designated. See Tower Law, Section 7.G.4. ("... the Board may disapprove an application for any of the following reasons ... 4) The use or construction of Wireless Telecommunications Facilities which is contrary to an already stated purpose of a specific zoning or land use designation."). Thus, it was unreasonable for the Town Board to further delay action on Masterpage's application by referring it to the Planning Board, for the third time, to apply for reconsideration of the subdivision, as it had no authority to do so

> and could have instead denied the application, many months earlier, upon learning Masterpage's proposed use of the site was contrary to the site's recreational use designation.
>
> * * *
>
> As to the environmental issues, and the SEQRA review process, the Town Board had Masterpage's application for nearly two years as of April 2002, but had not taken the first step in reviewing the environmental impact of the facility, despite Shuster's recommendation on September 20, 2001, eight months earlier, that it: (1) obtain an alternative coverage analysis from Masterpage; or (2) approve (a) a conditioned negative declaration, or (b) a positive declaration with the requirement that Masterpage submit a Draft Environmental Impact Statement. Thus, the Town's further delay of Masterpage's application on these grounds was unreasonable. Accordingly, as there is no issue of material fact requiring trial, Masterpage is entitled to summary judgment on its unreasonable delay claim.

Masterpage Communications, Inc. v. Town of Olive, 2005 WL 2387838 at 12-13 (N.D.N.Y. 2005). Whatever factual distinctions may exist between this case and that one (such as the presence of a moratorium in Olive) are overcome by the fact that, in this case, the Court has **already found** TCA violations and has moved into the remedial stage thereon. At this point, therefore, general remedial principles under the TCA dictate that, in light of the finding of violation of the TCA's written decision requirement, the Town cannot resort to the gimmicks it has employed here:

> The district court concluded that an order requiring the City to act on Wireless's applications within sixty days was the appropriate remedy. This order failed to recognize that the City had already effectively denied Wireless's applications in violation of the TCA. The district court's sixty-day order would therefore only result in the inevitable occurring, namely a reaffirmance of the City's informal decision that the applications ought to be denied under the new regulations. See New Par, 301 F.3d at 400 (noting that generally where the defendant has already provided a decision in violation of the TCA, remand would serve no useful purpose). The City has recognized that under the amended zoning ordinances Wireless's applications are inadequate. See J.A. at 66 (Answer) (noting that "the proposed site in each [Wireless] application did not and does not meet the setback requirements" in the amended zoning ordinance). Given that the sixty-day order would serve no useful purpose, we conclude that the proper remedy is injunctive relief compelling the City to grant the requested permits.

Tennessee ex rel. Wireless Income Properties, LLC v. City of Chattanooga, 403 F.3d 392, (6th Cir.2005). The Sixth Circuit, at id., cited and quoted the First Circuit's decision National Tower, 297 F.3d at 21-22, 24 (substantial evidence violation):

> The statutory requirements [of the TCA] that the board act within "a reasonable period of time," and that the reviewing court hear and decide the action "on an expedited basis," indicate that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another. Instead, in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order, like the one the district court issued in this case, instructing the board to authorize construction.

This Court's Order gave the Town its chance to act in conformity with the law. While the Zoning Board of Review complied, the Town – also a defendant – is now interfering with the Order and violating the TCA by doing exactly what the First and Sixth Circuits feared, and continuing the pattern of hostility to wireless communications facilities previously evidenced by the Zoning Board of Review – leading to the Order's ruling that there are disputed facts on the effective prohibition claim.[7] The Court should not countenance the Town's erroneous and dilatory invocation of inapplicable Planning Commission review procedures. It should enter an order for further relief enjoining the Town from requiring Planning Commission Review, or

---

7 Effective prohibition exists where the fair inference from the board's words and actions in a particular matter is that whether or not there is a coverage gap and whether or not there are alternative sites that could fill that coverage gap, the board is not prepared to permit construction on [the plaintiff's] chosen site. As a result, any further reasonable efforts by [the plaintiff] are so likely to be fruitless that it is a waste of time even to try. National Tower v. Plainville Zoning Board of Appeals, 297 F.3d 14 (1st Cir. 2002). See also Second Generation Properties, L.P. v. Town of Pelham, 313 F.3d 620, 629 (1st Cir. 2002). AT&T Wireless showed, on this record, that enough Board members have an anti-tower animus to make further applications futile. See Report at 29-30 and n.27-28 (statements by some Board members "appear to reflect a hostility towards Plaintiffs' application"). See also A. 154(Member Crosson sees no need for towers to cover Route 1 and speculates about future technology or future applications based upon no evidence at all.); A. 155(Member Horstmann sees no need for one more vendor to provide the competition that Congress intended in the wireless service industry.); A. 144, 155-156(Member Krantz views towers as visual pollution, objects to the use of cell phones on highways and is sufficiently moved by picayune issues to cite them in support of his vote.); Member Dreczko relied solely upon the balloon test and missing submission issues to deny the application, instead of the less drastic alternative: asking for another balloon test and additional submissions.

should amend the Order to require the Town to issue a permit "authoriz[ing] construction" based upon review and compliance with standard building permit criteria, excluding Development Plan Review under Article VIII of the Charlestown Zoning Ordinance or any other gimmicks interposed for delay.

B. Lack of Substantial Evidence

The Town's actions also lack substantial evidence and a written decision. ASubstantial evidence@ review under the TCA is Acentrally directed to those rulings that the Board is expected to make under state law and local ordinance in deciding on variances, special exceptions and the like. Southwestern Bell Mobile Systems v. Todd, 244 F.3d 51, 58 (1st Cir. 2001), quoting, among other cases, Town of Amherst v. Omnipoint Communications Enterprises, Inc., 173 F.3d 9, 15 (1st Cir. 1999).

As fully argued above, the Commission is not expected to make any "rulings" at all at this point "under state law and local ordinance." State law precludes it from doing so. Therefore, no substantial evidence can possibly support its decision to proceed with the merits; nor could substantial evidence support its decision to go forward without ruling upon MCF's objection. Moreover, the Planning Commission's refusal to entertain MCF's jurisdictional objection is not supported by a written explanation. The Court need go no further before ruling that the Commission has, and can never have, any substantial evidence for anything it has or will do on this application.

B. IN THE ALTERNATIVE, ANY PROCEEDINGS BEFORE THE PLANNING COMMISSION MUST BE WITHOUT PREJUDICE TO MCF'S JURISDICTIONAL OBJECTION.

The Commission's refusal even to consider MCF's jurisdictional objection (Gannon Aff. ¶ 10 and Exhibit C) places MCF in an untenable position. This Court should order the Town to remedy this problem by requiring a Commission ruling on MCF's jurisdictional objection and, if the objection is overruled, allowing MCF to proceed without waiver of its jurisdictional objection.

The problem arises under the general principle of Rhode Island law that:

> It is a well-settled principle of administrative law that one who seeks or has acquired rights before an administrative agency may not, in the same proceeding, attack the validity of the statute that has created the agency. See, e.g. Frost v. Corporation Commission of Oklahoma, 278 U.S. 515 (1929); Hurley v. Commission of Fisheries of Virginia, 257 U.S. 223 (1921); [additional state cases omitted]. We have applied this principle in zoning matters. See Russell v. Zoning Board of Tiverton, 100 R.I. 728, 731 (1966); Sweck v. Zoning Board of North Kingstown, 77 R.I. 8,11 (1950).

Easton's Point Association v. Coastal Resources Management Council, 522 A.2d 199, 201 (R.I. 1987). Shortly after the Easton's Point decision, the Rhode Island Supreme Court extended this same principle to hold that "a litigant may not collaterally attack the constitutionality of said enabling statute in a separate proceeding." Wellington Hotel Associates v. Miner, 543 A.2d 656, 659 (1988).

By refusing even to rule upon MCF's jurisdictional objection prior to substantive proceedings, the Commission has consciously chosen to force MCF to confront the dilemma posed by the case law – either proceed to the merits, thereby arguably waiving objections to decisions by an apparently hostile forum that has no jurisdiction; or withdraw the application and

not receive the desired permit. If the Commission agreed with MCF's jurisdictional objection, all issues would be resolved. If it disagrees, the issue would be crystallized. By refusing to rule at all, the Commission has maximized the impediment to MCF's pursuit of its rights.

This District identified and resolved this problem in Smithfield Concerned Citizens for Fair Zoning v. The Town of Smithfield, 719 F.Supp. 75 (D.R.I. 1989)(Torres, J.), aff'd on other grounds, 907 F.2d 239 (1st Cir. 1990). In that case, the Court discussed the Sweck case (cited in Easton's Point, above, as the source of the rule in Rhode Island) and other Rhode Island authority (but not Easton's Point and Wellington Hotel), concluding that "Rhode Island law does not appear to bar one who unsuccessfully seeks a variance from challenging the constitutionality of the ordinance in a subsequent proceeding." 719 F.Supp. at 80. While that conclusion may be in tension with Wellington Hotel, Judge Torres' additional rationale is based upon federal law and appears to apply to the federal TCA claims here:

> Even if [the contention that proceeding before the agency constitutes a waiver] is correct, it would not foreclose any right they have under the United States Constitution to challenge the Ordinance in a federal court. A state court has no power to bind a federal court with respect to questions of federal law, in general, or rights guaranteed by the United States Constitution, in particular. [citations omitted]

719 F.Supp. at 80.

The First Circuit disagreed with Judge Torres' overall decision that exhaustion of remedies was required. It held that Court proceedings on a facial substantive due process challenge were proper without further resort to local administrative procedures, and therefore did not need to reach the issue of waiver under Rhode Island law. 907 F.2d at 242-243. Judge Torres' ruling regarding waiver may still have been correct, despite his error on the exhaustion question generally, but there is no way to know, particularly in light of Wellington Hotel.

The upshot is a substantial burden upon MCF's assertion of its state and federal rights. It appears that its state law objections to the Commission's jurisdiction may be jeopardized by going forward, while the TCA claims may or may not be prejudiced. Yet, MCF's jurisdictional objection is grounded in state law preemption, and it is unsettled whether that objection has TCA relevance, if the Town's referral to the Commission did not contravene the Order or cause undue delay. To be sure, there would be potential effective prohibition claims if the Commission were to hear and deny the application, or impose discriminatory and burdensome conditions, but MCF cannot find that out unless it goes forward before the Commission, at peril of losing meritorious jurisdictional arguments.

All of this results despite MCF's good faith attempts to cooperate with local officials and work out disagreements over the Commission's role. In particular, as the Gannon Affidavit demonstrates, MCF tried to follow local procedures and work with local officials throughout the building permit process. It went to the Commission, as directed by the Building Official and the Town Planner, in an effort to exhaust local remedies, mindful of the Court's general preference for cooperation between TCA plaintiffs and local authorities. See Omnipoint v. Town of Amherst, 173 F.3d 9,14 (1st Cir. 1999). But, instead of welcoming the normal give-and-take, the Commission has refused to entertain MCF's presentation without requiring MCF to risk waiver of its claims. Compare Id. (Board members stressed . . . that negotiations with Omnipoint would be welcome.) The Courts have not, to our knowledge, yet held that a wireless communications facility applicant must exhaust remedies in a way that defeats the applicant's legitimate substantive claims and objections. Smithfield Concerned Citizens, 719 F. Supp. 75 (D.R.I. 1989) though not a TCA case, appears to point in a different direction, at least to the extent of ruling

that exhaustion does not impair the assertion of rights in federal court. If this Court does not conclude that the Commission's actions violate the Order or the TCA, it should follow Judge Torres' decision and hold that exhaustion of remedies before the Commission does not operate to waive any of MCF's rights.

## CONCLUSION

For the above reasons, the Court should order the Town to process and grant MCF's building permit application without requiring review under Article VIII of the Charlestown Ordinance and without referral to the Charlestown Planning Commission. In the alternative, the Court should order the Town to rule on MCF's jurisdictional objection to review by the Planning Commission and, if that objection is overruled, to allow MCF and Cingular to proceed without waiver of the jurisdictional argument.

**By Its Attorneys,**

**Richard J. Welch, R.I. Bar # 4497**
**Moses Afonso Jackvony, Ltd.**
**170 Westminster Street, Suite 201**
**Providence, Rhode Island 02903**
**(401) 454-3600**

Douglas H. Wilkins (RJW)
**Douglas H. Wilkins,**
**ANDERSON & KREIGER LLP**
**43 Thorndike Street**
**Cambridge, MA 02141**
**(617) 252-6575**
**Pro Hac Vice**

**Dated: March 17, 2006**

## CERTIFICATE OF SERVICE

I certify that a copy of this Memorandum to was mailed via first class mail, postage prepaid, to Christopher J. Zangari, Esquire, Marinosci & Zangari, 1575 South County Trail, East Greenwich, Rhode Island 02818 on the 17th day of March 2006.

wpdata/at&t/Charelstwon/memofurther relief 03.17.06